May I reserve three minutes for rebuttal? Yes. May it please the court, my name is Daryl Benthy and I represent Appellant Boyd Street Distro, LLC. I do want to start by just thanking everyone for working so hard to put together this virtual courtroom, this semi-virtual courtroom. It's amazing to see these things happen that no one ever thought would happen. I recognize the burden that beyond this case. Counsel, maybe you could move the mic a little closer. I'm having a little bit of difficulty hearing you. Okay. Is that any better for you? Yes, thank you. Right. There are two main issues here. The first is somewhat more minor dealing with the scope of the injunction. It is black letter law that only registered copyrights can be the subject of a copyright suit, which limits the injunction on a copyright basis to the single cake logo that's been copyrighted. As to the other unregistered copyrights, the order would only extend to those to the extent it could be upheld as a trademark injunction. The court's order is not clear about that, and that being the final word on what the injunction might mean, I think it important that it be addressed. Does it matter? I'm wondering whether the district court's error at one point in the case proceedings where it referred to copyright when it should have just referred to trademark matters, because couldn't the same injunction issue just on the basis of trademark? Well, I think that that may be why we're here, because that issue alone might not have been dispositive had the trademark part of it been valid. But that brings me to the issue that I think I wanted to spend more time addressing, which is the legality of the underlying Delta 8 products themselves, because the trademark, of course, for two reasons we need to know. A trademark must be used, lawfully used in commerce, in order to be valid. That was a burden that AK Futures had in seeking the injunction. Also, the lawful goods, not illegal goods. The lawfulness issue, it looked to me as though this new kind of marijuana, basically, it's kind of like near beer. I don't know if, I think before the constitutional amendment repealing the prohibition amendment went into effect, the Roosevelt administration legalized near beer. It was very low proof beer, and they still sell it in Charlottesville, so the college kids can get near beer, or at least they did when I was there. And it looks like this less than or equal to, what is it, 0.3% THC is the near beer of marijuana, and it's legal under this farm bill. You say that, well, it's not what the regulations say, but it looks like that's what the statute says. Well, the statute is referring to the concentration of Delta 9 THC. It says that, and it's not a near beer. The point of the 0.3% Delta 9 THC is to eliminate anything psychoactive. This was the farm bill. But if it meets that standard, it's hemp, and if it's hemp under the regs and the statute and the regulations, and frankly, I don't understand where your argument comes from, that the product which they say they're selling is illegal because it seems to directly meet the definition of hemp, which the statute, the regulations, and the DEA have said are directly removed from the definition of hemp. Is there any language in either the statute or the regulation you can point to to say this particular product, as it's claimed to be, is a Schedule I as opposed to hemp, which is not a Schedule I? Well, the DEA has it listed on its Schedule I, Delta 8, and it did that over the summer prior to this taking place. It put Delta 8 on the schedule because it is a psychoactive drug, and what happened is somebody figured out that you can actually take enough Delta 8 out of hemp, or whatever they're actually taking it out of, we don't really know, and you can get enough of it to make it psychoactive, which was not something that was previously imagined. So the idea is that there was an accidental loophole created that legalized a whole new drug. And I think if it's an accidental loophole that was created that legalized a psychoactive drug, why isn't it just for to plug the loophole if they regard it as an undesirable one? It may be that Congress thinks, well, it's okay if people get a little bit high. It may be that Congress doesn't regard that as undesirable. They can do whatever they want about legalizing or not legalizing marijuana, or legalizing near-beer marijuana, or whatever. We surely recognize there are a lot of products that would still be prohibited, even if they were derived from hemp that had less than 0.3 THC, if they contained other chemicals that, for whatever reason, are on a ban schedule. And this is such a product. Counsel, I'd like you to get back to my question here, which is, what regulation text or statute text supports your argument that the product which is trademarked is a Schedule I illegal product such that the law does not allow us to protect their trademark? Well, there's two things that I would say. The first is that, again, it is on the Schedule I, which is part of the court record below. It's at ER 79. It does distinctly list delta-8 THC as an individual item on the schedule from the DEA. Secondly, in the regulations that were presented below, there's a distinction between the DEA's been very clear in its regulations. I apologize, I'm looking for the page of it. Well, Counsel, I'll just start then with one, although I think there are a number. If we're looking at, for example, 21 CFR 1308.11, I guess 31, with the definition of tetrahydrocannabinols, and we look at two. Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639.0. And when I go to 7 U.S.C. 1639.0, the term hemp means the plant with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. Under that definition, the district court found is what they're selling is hemp, and hemp is not defined under this section. So, I mean, I'm still having trouble understanding, and that's just one example, I'm still having trouble understanding why that doesn't mean the product they claim they're selling is legal. Bill, the second issue, and the DEA does address this in the rulemaking that's at ER 55-56 in the Federal Register, describing that synthetically derived tetrahydrocannabinols are still regulated in Schedule I, which is probably why Delta ATHC is put there. I'm sorry, what are you pointing to, Bill? If you're looking at agency guidance, I'm looking at the September 15, 2021 agency letter, which says that Delta ATHC is a tetrahydrocannabinol substance contained in the plant and can also be produced synthetically from non-cannabis materials. So, I mean, when I look at the agency letter, and I don't know why we would need to do that given the regs and the statute, that doesn't help your argument. I was looking, well, two things. Looking at ER 56, which is about essentially what you just told me about, synthetically derived tetrahydro... tetrahydro... THC products, excuse me. But we also don't know how these are produced. All we have is a single line from the CEO throwing out there saying these are derived from hemp. It's rather like when you go to... I'm sorry, but that's a factual challenge, right? Well, certainly that would be because when we come to a... But we're dealing here with an appeal of a preliminary injunction, right? Yes. And so those kind of determinations by the district court as opposed to the legal determination by the district court, we look at those under an abuse of discretion standard, right? I understand that. I think though when we look at a court's order that doesn't mention Schedule 1 of DEA at all and simply concludes, well, they look like they're legal and the only evidence in the record was a single line from the CEO that is conclusive. And we are, by this process, essentially legalizing a whole new drug. And that's what these... That's what this order is about. But you can do discovery, right? Not before a preliminary injunction. Well, but you could... There's nothing stopping you now from doing discovery, right? This is... Well, now there is, but that's a different matter. And if it turns out the CEO lied, you would certainly have a lot of remedies, right? Quite possibly. Counselor, doesn't the... Isn't the DEA interpretation that you're referencing that you say supports your argument, doesn't it deal with synthetically derived Delta 8? Isn't that what that is referencing? It does. And... Well, this is not what AK is selling isn't synthetically derived, is it? I don't think we know how it's derived. All we know it's derived from hemp. Pardon? We don't know how it's derived. The statute is not distinguishing between things that are entirely synthetically created. It's not. So when they do synthetically derived, we don't have that. All of that needed to be... All that evidence that this really is derived needed to be before the trial court, I think, in the first instance, in order to meet the very high burden to say this deserves an injunction. But counsel, you had the opportunity to respond to the motion for preliminary injunction, right? Eventually, yes. And you would have had the conclusions which suggested that the Mouvant's claims were false as a matter of fact, right? I don't think so. Why not? My client is a small distributor in downtown LA. Pardon me? My client is a small distributor in downtown Los Angeles, would not have access to the information as to how these are produced. Well, I mean, you could have done chemical analyses theoretically. You could have done discovery. But it's not a reason to overturn a preliminary injunction that you think it was entered too quickly because of your client's resources. Well, I do think in the posture of preliminary injunction, it is a lot to suggest that a client do chemical tests on products they do not have, right? Again, I think that I just come back to the fact that the burden of proving these were legal belongs squarely on AK Futures. And I think what they submitted, especially with the consequence of legalizing a whole new drug market, and not that these orders are being used for in court after court, the established precedent, that was too little. All right. Did you want to reserve the remainder of your time, counsel? We'll give you a little hear from your friend, Mr. Siegel, whenever you're ready. Thank you, Your Honor. May it please the court, James Siegel, on behalf of Appellee AK Futures. So the district court here did not abuse its discretion in entering a preliminary injunction prohibiting Appellant Boyd Street from continuing to sell counterfeit, untested versions of AKF's cake products. As the district court correctly recognized, it can be little dispute that Boyd Street sold goods that violate AKF's trademarks and copyright. It can also be little dispute that AKF would be harmed by such continued sales. It looks like the district court made a mistake in applying the term copyright when it meant to say trademark on some of the parts of its decisions. Does it matter? Is it material? No, Your Honor, it's not material. And if you actually look at the injunction itself, which is at ER 83, it correctly enjoins the one registered copyright and then of the six trademarks. So ER 83, you're saying, corrects the problem? Yeah, that's the ultimate injunction that is entered, and it correctly reflects the relevant property rights. And even aside from that, because the copyright is also trademark protected, it's the cake logo is the subject of the registered copyright, and that's also one of the trademarks it issued. By enjoining the trademark violations, it has the exact same effect as enjoining the copyright violations. So there's really, the slight misstatement in the court's opinion really had no effect whatsoever. And regardless of whether it's all six or just that one copyright, it's clear that there's a likelihood of success on the copyright claim, because again, that the Boyd Street would... enjoin copyright violation, and it wouldn't matter whether it misspoke and it didn't. What really matters is just whether the product was lawfully sold. I think that's essentially right. And whether it's lawfully sold matters only to the trademark claim. So I think this is what the other side is arguing, is that if this is in fact unlawfully being sold in commerce, which it's not, and I'm happy to get into that, I think Your Honor seems to have a fairly good grasp on the relevance of that short regulatory scheme. But if this were being sold illegally in commerce, then it would not be entitled to trademark protection. It would still be entitled to copyright protection. And so the injunction would mean... Well, it might or might not be entitled to copyright protection, taking into account traditional equitable principles, but you don't need us to go there, right? I don't need you to go there because it is lawfully being sold in commerce. And just to quickly go to that, so their central argument on appeal, as they again made it here today, is that Federal actually prohibits the sale of these counterfeit products or any other Delta 8 products. That's just based on a simple misreading of the governing statutes and regulations. So Congress has expressly excluded all derivatives and extracts... But doesn't Boyd Street argues, it points to the manufacturing process for Delta 8, and it argues that that manufacturing process removes Delta 8 from the Farm Act's definition of hemp. Now, why shouldn't we agree with Boyd Street on that? Because it's just not, that's not consistent with the statute or the regulations or the DA guidance. So it's not the process of extraction that matters, it's the source. It's the what? It's the source. So it's where the Delta 8 is derived from that matters, and not the means by which it is derived. So if you look at, the key is the statutory definition of it, and I quote, the plant, Cannabis Sativa L, and any parts of that plant, including the seeds thereof, and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts or isomers, whether growing or not, the Delta 9 THC concentration is not more than 0.3% on a dry weight basis. So it's all derivatives and extracts of the cannabis plant. And I assume your argument too is that if for any reason we decided we wanted to look beyond the text of the statute to what the agency has actually said, this agency letter, which you've cited, for example, at the end of footnote one, says the same thing. That's exactly right, Your Honor. That agency letter, I think, makes it crystal clear. So the distinction is between, so the agency used in its guidance, the phrase synthetically derived in its initial rulemaking proceeding, and that's apparently what Boyd Street is trying to say, that products like AKX products are synthetically derived because even though they're hemp-derived, something in the process for concocting them turns them into a synthetic derivation. That's not what the DEA said either in the guidance, and in that letter, Your Honor just said it made it crystal clear. So in the guidance, it distinguishes, and this is consistent with the statutory language, it distinguishes synthetically derived Delta 8 from materials derived from the plant cannabis Sativa L. It says that the latter are defined as hemp under the statute, and therefore exempt from any prohibitions on THC in Schedule 1. But the only way we would even get to the letter or the record site that your friend has relied on or the agency letter is if we found the statute or the regs ambiguous. I think that's right, Your Honor. I mean, I think we win whatever the level of analysis that the court goes into. There's no relevant ambiguity in any of these materials. So they've cited also the fact that Delta 8 had lifted in Schedule 1, and that's true, but that's because certain types of Delta 8 may be still prohibited if they're not derived from the cannabis plant. If they're instead synthetically derived, that means derived from synthetic materials. And so any question about sort of how these products here were manufactured is really irrelevant. The question is just what was the source of the products? Because as the record says, there's nothing contrary to the record. Mr. Siegel, let me ask you this. At the preliminary injunction stage, and that's what this appeal was from, what would have Boyd Street had to have shown to be able to overcome the statutory text argument that you're making? It would have to show that the Delta 8 products that AKF is selling are not in fact derived from the hemp plant as it said they were, as the owner declared they were. It would have to show that they were instead derived from synthetic materials. And at that stage, did they have the burden of proving that the product that you're trying to protect was unlawful? Well, actually, I think it's an open question. So there's only been two cases that are both in this circuit that have sort of clearly imposed the lawful use standard, and they don't say clearly one way or the other whether that's an affirmative defense or just a defense. Here, I don't think it matters because whichever way, whichever party bore the burden, there's only sort of one piece of evidence in the record, and it's totally in our favor. I think I also point out that they didn't make... Basically, the argument they made is a legal one, it's an incorrect one. They argued that the method of concocting this drug is what matters, and so that's what they're relying on below, that's what they're relying on here. And there's just nothing to support that. Did they make any type of evidentiary objection to the declaration of your client's CEO? They did not, Your Honor. So even if they could have made an evidentiary objection to the conclusions that were in the declaration, they didn't do that? That's right, Your Honor. And frankly, I'm not sure what objections they could have made, but they certainly didn't make them. And so there's unrebutted record evidence, this is derived from the hemp plant, that's very clear that under the statute that's enough. It may well be that they can attempt to make some sort of showing following discovery that it's in fact derived from the hemp plant, but that doesn't even appear to be their legal argument. Their legal argument is instead that it's the method of manufacture that matters, and simply under the statute's regulations, the guidance, everything else, that that's not correct. On another point, didn't Boyd Street say that they had stopped selling the cake-branded product? And as a result of that, how could you show irreparable harm? Well, a few things, Your Honor. First, there's a presumption of irreparable harm when likelihood of success on a trademark claim is shown. But they said they're not going to sell it, they're not selling it anymore. So, but that doesn't necessarily rebut that presumption as a matter of harm, that a district court isn't sort of required as a matter of law to accept the conclusory declaration that they're not going to sell the product anymore. So, and part of the reason the district court didn't expressly address that declaration that way is because below, the other side didn't argue that there was no showing irreparable harm. If you look at their opposition, they basically conceded the showing of irreparable harm made clear. So, that's part of why the district court's discussion of this isn't as elaborate as it could be. But even if it, but setting that aside, sort of setting aside those waiver issues, I think there's two key points. One is that there's a presumption of irreparable harm. And I actually take Boyd Street's reply to concede that their declaration couldn't have overcome that as a matter of law, such as an abuse of discretion for the court to enter a preliminary injunction. I think their argument now is that given the presumption of irreparable harm, which applies only to the trademark claim, if in fact the use is not lawful, if in fact federal law prohibits this, and therefore the trademark claim is not viable, that for the copyright claim, we have not shown that there was irreparable harm. Because for a copyright claim, there's actually not the presumption of irreparable harm. At the time the district court issued the injunction order, they were still doing business. Is that right? That's correct. And I believe they still are doing business. And I think, and yeah, and just sort of setting aside that presumption of irreparable harm, they're still doing business. As the declaration itself reflects, they're still doing it often in all cash business, in which they accept sort of someone coming into their store with a box of vaping products and asking them to sell it on consignment with sort of no indication of where they're from or what they are. So there's good reasons to be suspicious that they're really checking to ensure that products aren't counterfeit. There's good reasons to doubt the veracity of their owner's statement that they're not going to be selling these products because they believe that they're illegal under federal law, when in fact they've been selling them. The whole premise of this suit is that they've been selling these products. So I don't think there's anything in that declaration that would render it an abuse of discretion for the court to find that there are ample evidence of irreparable harm from continued sales was enough to entitle us to a preliminary injunction. I think this court has no further questions. I think I've addressed everything that counsel said at the outset and everything I helped to address. All right. Thank you, counsel. Thank you very much, Ron. I'm going to ask that the court adjourn. All right. You have a little under two minutes. We'll put two minutes on the clock for you for your rebuttal, counsel. Just a couple of quick issues. The declaration that was referred to does say the company is still in business, but it does say they had stopped making any sales as of that point, just to be clear about that. I also do want to just point out this is an unregulated product in an unregulated market. When I'm told, well, your client's making cash buys and cash sales, yes, nobody knows how to find what's authentic or what's inauthentic. Nothing's registered. Nothing's labeled anywhere. And it's because the federal law status has been unclear as to this product. And there is no higher court decision, no rule of the DEA, no statement that these Delta A products are in fact lawful for sale in every one of the 50 states, whether the 50 states want it or not. And that's a decision that could come out of this court if the early reduction is upheld. And I think that is far more than the case calls for and far more than the law should permit, because I think everyone would admit that Congress certainly didn't think this was going to happen, whether or not we concede that they did or did not, whether or not we think that actually is positive. And that's what I have to say to you all. So thank you very much for your time. Thank you. We thank both counsel for their helpful arguments. The case just argued is submitted. And with that, we are adjourned for the day and the week. All rise. This court for this session stands adjourned. This court is adjourned.
judges: KLEINFELD, Fisher, BENNETT